[Cite as *Foster v. Toledo City School Dist. Bd. of Edn.*, 2025-Ohio-1769.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Ramon Foster

      Appellant

v.

Board of Education of Toledo City
School District, et al.,

      Appellees

Court of Appeals No. L-24-1068

Trial Court No. CI0202301027

**DECISION AND JUDGMENT**

Decided:  May 16, 2025

* * * * *

Meghan Anderson Roth and
Francheska N. Edinger, for appellees.

Michael A. Bruno, Esq., and
Andrea R. Young, Esq., for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1}  Appellant Ramon Foster appeals the judgment of the Lucas County Court of Common Pleas, granting appellees the Board of Education of Toledo City School District and Cynthia Fox's Civ.R. 12(B)(6) motion to dismiss his complaint for spoliation

of evidence. The issue presented in this appeal is whether Fox was sued in her official or personal capacity. Because Fox was sued in her personal capacity, the trial court's judgment is reversed.

**I. Factual Background and Procedural History**

**{¶ 2}** In his complaint for spoliation, Foster alleged that on September 24, 2019, he was lawfully operating his motorcycle on Central Avenue in Toledo, Lucas County, when a Toledo Public Schools ("TPS") bus abruptly changed lanes into his right of way, causing him to take evasive action that resulted in him laying down his motorcycle. He suffered serious injuries as a result of the accident.

**{¶ 3}** Foster next alleged that,

[u]pon being informed of the incident, Defendant Fox, in the course of and scope of her employment with Defendant TPS, pulled the video cards from two TPS buses, viewed the video footage, determined that the videos and audio recordings contained information on the Plaintiff's movements and location during the incident, and maintained possession of both video cards.

Three days later, Foster's attorneys sent a letter to TPS and its insurance carrier formally demanding that any video footage be retained and preserved. He further alleged that "Defendant Fox, under oath, upon deposition, admitted to holding the video cards for two to three weeks, followed by her returning both video cards to TPS buses to be taped over without making any prior attempt to save or preserve the video footage of September 24, 2019."

**{¶ 4}** His complaint asserted one cause of action "against Defendant Board of Education of Toledo City School District ("TPS") and against Cynthia Fox for willful

2.

spoliation of evidence." He stated that "[u]pon information and belief, Defendant Cynthia Fox is an individual and resident of Holland, Lucas County, Ohio. At all times relevant herein, Defendant Fox was an employee of Defendant Board of Education of Toledo City School District and was acting in the course and scope of said employment." For the offense, he specifically alleged:

15. Defendants knew that as a result of the motorcycle crash there would be probable litigation involving Plaintiff Ramon Foster, yet willfully destroyed and/or erased the video capturing the incident involving Plaintiff.

16. Defendant's conduct was willful and was done in an effort to disrupt Plaintiff's case and such actions have actually disrupted Plaintiff's case.

17. . . .

18. By virtue of Defendants' conduct, Plaintiff is entitled to an award of damages, both compensatory and punitive, an award of attorneys' fees, sanctions, an adverse jury instruction, and a presumption of negligence.

19. By reason of the above-described willful, wrongful, intentional, conscious, and reckless acts of Defendants, Plaintiff is entitled to recover punitive damages and attorney fees.

{¶ 5} Fox was served with the complaint at her personal residence.

{¶ 6} Upon receipt of the complaint, appellees moved to dismiss it under Civ.R. 12(B)(6) for failing to state a claim upon which relief can be granted. They first argued that spoliation is an intentional tort, from which TPS is immune under R.C. 2744.02. Notably, the parties do not dispute this conclusion, and it is not addressed in this appeal. Instead, what is at issue is appellees' argument that Fox also enjoys immunity. Appellees

3.

argued that Fox was entitled to immunity under R.C. 2744.03(A)(6) because the complaint did not sufficiently allege any operative facts that she acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." Alternatively, they argued that Fox was sued in her official capacity and thus also enjoys the same immunity as TPS under R.C. 2744.02.

{¶ 7} Foster responded that he sued Fox in her personal capacity and that she was not entitled to immunity pursuant to R.C. 2744.03(A)(6). In support, he contended that he "pled a set of facts that reasonable minds could find that Cynthia Fox intentionally destroyed the video of the crash with the intent to harm Plaintiff, that she had a dishonest purpose or ulterior motive by destroying the videos, that she failed to exercise any care, and that she consciously disregarded the risk of harm to Plaintiff," thereby satisfying the malicious purpose, bad faith, or wanton or reckless manner exception.

{¶ 8} Appellees replied that because Fox was sued in her official capacity, immunity under R.C. 2744.02, not 2744.03, applied.

{¶ 9} Foster sur-replied that immunity under R.C. 2744.02 applies where office holders are sued in their official capacity, and that the same does not extend to employees.

{¶ 10} Finally, appellees sur-sur-replied, citing authority that a claim is redundant when it is brought against a governmental entity and its agent acting in his or her official capacity.

4.

**{¶ 11}** On February 20, 2024, the trial court entered its judgment granting appellees' motion to dismiss. Quoting *Schaad v. Buckeye Valley Local School Dist. Bd. of Educ.*, 2016-Ohio-569, ¶ 32 (5th Dist.), the trial court recognized that "an action against an officeholder or employee in his or her official capacity is considered an action against the political subdivision he or she represents, and the officeholder in such an action is entitled to immunity from liability under the R.C. 2744.02 political subdivision immunity analysis." Applying the facts of the present case, the trial court found that Foster sued Fox in her official capacity only. Specifically, it noted that the complaint alleged that at all times Fox was an employee acting in the course and scope of her employment and did not mention Fox being sued in any personal capacity. The trial court further recognized that Foster sought punitive damages due to the conduct of the "Defendants." Acknowledging the rule that punitive damages cannot be awarded against a political subdivision performing a government function, the trial court reasoned that Foster's use of the plural "defendants" was not an indication that Foster sued Fox in her personal capacity—from whom he could receive punitive damages—but rather was an indication that Foster simply was not aware of the rule. Therefore, because Foster failed to assert his spoliation claim against Fox in her personal capacity, the trial court held that Fox is entitled to the same immunity as her employer.

## II. Assignment of Error

**{¶ 12}** Foster timely appeals the trial court's February 20, 2024 judgment entry, raising one assignment of error for review:

1. The trial court erred in dismissing Appellant's Complaint for spoliation after determining Appellee Fox was only sued in her official capacity and not her individual capacity by relying on only three factors, all of which supported Appellant's position.

### III. Analysis

{¶ 13} Appellate courts review de novo a trial court's decision granting a Civ.R. 12(B)(6) motion to dismiss. *Curcio v. Hufford*, 2022-Ohio-4766, ¶ 12 (6th Dist.), citing *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5. "'A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint.'" *Med. Mut. of Ohio v. FrontPath Health Coalition*, 2023-Ohio-243, ¶ 12 (6th Dist.), quoting *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). In reviewing a Civ.R. 12(B)(6) motion, the court presumes that the complaint's factual allegations are true and makes all reasonable inferences in the nonmoving party's favor. *Curcio* at ¶ 12; *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). To dismiss the complaint, "'it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought.'" *Id.*, quoting *Ohio Bur. of Workers' Comp. v. McKinley*, 2011-Ohio-4432, ¶ 12.

{¶ 14} At the outset, relying on *Schaad*, the parties both agree that the determinative issue is whether Foster sued Fox in her official or personal capacity. This is the only issue raised and argued in their briefs.

6.

{¶ 15} In *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985), the United States Supreme Court described the difference between personal-capacity[1] and official-capacity suits:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. . . . Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. . . . As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

(Emphasis sic; internal quotations and citations omitted for readability.).

{¶ 16} The Ohio Supreme Court, in *Lambert v. Clancy*, 2010-Ohio-1483, discussed the relationship between personal and official capacity suits and political subdivision immunity as it applied to officeholders. First, it briefly described political subdivision immunity in Ohio:

> R.C. Chapter 2744 was enacted in 1985 and addresses when political subdivisions, their departments and agencies, and their employees are immune from liability for their actions. Determining whether a political subdivision is immune from liability under R.C. 2744.02, as this court has frequently stated, involves a three-tiered analysis. . . . A general grant of immunity is provided within the first tier, which states that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in

_____

[1] Personal-capacity suits are sometimes also referred to as individual-capacity suits. *Graham* at 165, fn. 10.

7.

connection with a governmental or proprietary function." R.C. 2744.02(A)(1).

The second tier in the immunity analysis focuses on the five exceptions to this immunity, which are listed in R.C. 2744.02(B). . . . If any of the exceptions to immunity are applicable, thereby exposing the political subdivision to liability, the third tier of the analysis assesses whether any of the defenses to liability contained in R.C. 2744.03 apply to reinstate immunity. . . .

Immunity is also extended to individual employees of political subdivisions. R.C. 2744.03(A)(6); . . .. For claims against individual employees, the three-tiered analysis used to determine whether a political subdivision is immune is not used. . . . Instead, R.C. 2744.03(A)(6) provides that an employee is personally immune from liability unless "(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code." For these purposes, allegations of negligence are insufficient to overcome the immunity granted to an employee of a political subdivision who acts within his or her official duties. . . .

Moreover, if the employee acted in good faith and not manifestly outside the scope of his or her employment or official responsibilities, the political subdivision has a duty to provide a defense for the employee if a civil action or proceeding against the employee for damages is commenced. R.C. 2744.07(A)(1); . . .. The political subdivision has a further duty to indemnify and hold harmless an employee if a judgment is obtained against the employee for acts or omissions in connection with a governmental or proprietary function, provided the employee acted in good faith and within the scope of his or her employment or official responsibilities. R.C. 2744.07(A)(2); . . ..

(Internal citations omitted for readability.) *Lambert* at ¶ 8-11.

{¶ 17} In *Lambert*, the plaintiff filed a complaint against "Greg Hartmann, Hamilton County, Ohio Clerk of Courts," alleging that the clerk's office improperly

revealed her personal information when it published an unredacted copy of her traffic ticket on the clerk of courts' website. *Id.* at ¶ 2, 6. The trial court dismissed her complaint pursuant to Civ.R. 12(B)(6) and (C) without opinion. *Id.* at ¶ 6. The appellate court reversed, summarily applying R.C. 2744.03(A)(6) "to conclude that Lambert pleaded sufficient allegations that Hartmann acted recklessly, willfully, and purposefully in publishing Lambert's personal and private information on the county website to overcome a motion to dismiss on the basis of immunity." *Id.* at ¶ 14.

{¶ 18} On further appeal, the Ohio Supreme Court reversed. In so doing, it initially determined that "Lambert asserted her claims against Hartmann in his official capacity as an officeholder of the political subdivision." *Id.* at ¶ 15. The Ohio Supreme Court based this determination on two facts. First, the complaint did not include "the words 'personally,' 'individually,' 'an employee of the Hamilton County Clerk of Courts,' or anything similar to denote that he is being sued in his individual capacity as a county employee as opposed to being sued in his official capacity as the clerk of courts." *Id.* Second, the allegations in the complaint "pertain to the policies and practices of the clerk of courts' office and not to actions taken by Hartmann personally." *Id.* at ¶ 16.

{¶ 19} Having determined that Hartmann was sued in his official capacity, the Ohio Supreme Court next considered "whether the political-subdivision-immunity analysis or the employee-immunity provisions apply to lawsuits in which the named defendant holds an elected office within a political subdivision, such as the clerk of courts, and that officeholder is sued in his official capacity." *Id.* at ¶ 17. In resolving this

9.

issue, the Ohio Supreme Court recognized that the clerk of courts' office "is an instrumentality of the county, through which the county's governmental functions are carried out," and is therefore "cloaked with the immunity granted to the political subdivision under R.C. 2744.02." *Id.* at ¶ 20. It then held that "when allegations are made against the elected holder of an office of a political subdivision who is sued in an official capacity, the officeholder is also entitled to the grant of immunity contained in R.C. 2744.02." *Id.* at ¶ 21. While acknowledging that officeholders are employees of political subdivisions and "immunity for the actions of employees or officers used in their individual capacities is addressed in another section of the Revised Code," the Ohio Supreme Court nonetheless reasoned that "the allegations in the complaint are ostensively directed against the office and against the named officeholder in the officeholder's official capacity. This is the equivalent of suing the political subdivision rather than the officeholder in an individual or personal capacity." *Id.*

{¶ 20} The Ohio Supreme Court therefore held,

[W]hen the allegations contained in a complaint are directed against an office of a political subdivision, the officeholder named as a defendant is sued in his or her official capacity, rather than in his or her individual or personal capacity. Moreover, the political-subdivision-immunity analysis set forth in R.C. 2744.02 applies to lawsuits in which the named defendant holds an elected office within a political subdivision, and that officeholder is sued in his or her official capacity.

*Id.* at ¶ 22.

{¶ 21} The Fifth District in *Schaad* extended the logic in *Lambert* to employees of political subdivisions, not just officeholders. *Schaad*, 2016-Ohio-569, at ¶ 32-35 (5th

10.

Dist.). In *Schaad*, the plaintiffs filed a lawsuit against the Buckeye Valley Local School District Board of Education ("Board") and against one of its middle school principals, Jason Spencer. *Id.* at ¶ 1-2. The complaint alleged that Spencer improperly interfered with a student's "school excuse/accommodation documents" and induced a hospital employee to disclose to him the student's nonpublic medical information. *Id.* at ¶ 3. Spencer and the Board moved for judgment on the pleadings pursuant to Civ.R. 12(C), raising R.C. Chapter 2744 immunity grounds. The trial court granted the motion as to the Board, but denied it as to Spencer. *Id.* at ¶ 9.

{¶ 22} Only Spencer filed a notice of appeal. On appeal, the Fifth District repeated Spencer's argument that he should be entitled to immunity under R.C. 2744.02 because he was sued in his official capacity only. Specifically, the Fifth District summarized his argument that "generally, under R.C. Chapter 2744, an action against an officeholder or employee in his or her official capacity is considered an action against the political subdivision he or she represents, and the officeholder in such an action is entitled to immunity from liability under the R.C. 2744.02 political subdivision immunity analysis." *Id.* at ¶ 32. Spencer urged that "when a complaint alleges claims against a political subdivision officeholder or employee, the trial court must make an initial capacity determination." *Id.* Further, he argued that because the Board had been found immune by the trial court under R.C. 2744.02, and because he had been sued in his official capacity, he was likewise immune from liability under that section. *Id.*

11.

{¶ 23} Employing this analytical framework, the Fifth District affirmed the denial of the motion for judgment on the pleadings as to Spencer, considering multiple factors. On the one hand, the complaint did not add the words "personally," "individually," or other "specific language to denote [Spencer] is being sued in his individual capacity." *Id.* at ¶ 33. The complaint also specifically alleged that Spencer's actions "were done in the course and scope of his employment with Buckeye Valley." *Id.* Additionally, the Fifth District noted that Spencer was served at his school business address, not his home address. *Id.* All of which suggested that Spencer was sued in his official capacity. On the other hand, in referring to all the defendants, the bottom of the caption of the amended complaint stated, "Each in their individual and official capacities, where applicable." *Id.* Further, the Fifth District reasoned that the request for punitive damages suggested that Spencer was being sued individually, since punitive damages cannot be awarded against a political subdivision performing a governmental function. *Id.* at ¶ 34. In light of these conflicting factors, the Fifth District concluded that there was "no reversible error in the trial court's lack of a specific determination at this juncture that [Spencer] is being sued only in his official capacity." *Id.* at ¶ 35.

{¶ 24} Notably, other federal and Ohio courts have similarly recognized that a suit against an employee in his or her official capacity is akin to a suit against the political subdivision itself. *See, e.g., King v. City of Columbus, Ohio*, 2019 WL 1508279, *2 (S.D. Ohio Apr. 5, 2019) (dismissing official-capacity suits against a police officer and police chief because "[t]he real party in interest in an official capacity suit is the government

12.

entity itself and not the named official"); *Faith Baptist Church v. Waterford Twp.*, 522 Fed.Appx. 322, 327 (6th Cir. 2013) ("Having sued Waterford Township, the entity for which [the prosecuting attorney] was an agent, the suit against [the prosecuting attorney] in his official capacity was superfluous."); *Jones v. Norwood*, 2013-Ohio-350, ¶ 38 (claims against building commissioner in his official capacity were considered claims against the city).

{¶ 25} In this case, Foster's complaint does not specify whether he is suing Fox in her official or personal capacity. "[I]n order to determine in what capacity a plaintiff has sued a defendant, courts may examine both the complaint and the 'course of proceedings.'" *Schaad* at ¶ 34, quoting *UAP-Columbus JV326132 v. Young*, 2012-Ohio-2471, ¶ 17 (10th Dist.). In addition to *Lambert* and *Schaad*, other Ohio courts have examined whether an officeholder or employee was sued in his or her official or personal capacity.

{¶ 26} For example, in *Parmertor v. Chardon Local Schools*, 2016-Ohio-761 (11th Dist.), following a tragic shooting, the plaintiffs brought claims against various political subdivisions, board members, and employees. On appeal, the Eleventh District upheld the trial court's determination that the political subdivisions were entitled to immunity under R.C. 2744.02. *Id.* at ¶ 24.

{¶ 27} The Eleventh District next considered whether the board members were sued in their individual or personal capacities. It recognized that while the complaint "listed the board members individually, without reference to their official capacity," it

13.

was the substance of the pleading, not its caption, that determined the nature of the claims. *Id.* at ¶ 31. There, the body of the complaint, while it alleged counts sounding in intentional tort against all defendants, included the specific allegation that at all material times, the individually named defendants were acting in the course and scope of their duties as board members. *Id.* at ¶ 8, 32. In addition, there were "no allegations that any of the board members took any personal actions that would indicate intentional or reckless conduct that could create a causal nexus between them individually and the injuries that resulted from the incident." *Id.* at ¶ 32. Thus, the Eleventh District concluded that the board members were sued in their official capacity and upheld the trial court's determination that they were entitled to the same immunity as the political subdivisions.

{¶ 28} Finally, the Eleventh District considered whether the individually named administrators and employees were entitled to immunity. Although it recognized that "the complaint, as drafted, indicated [the administrators and employees] were being sued only in their official capacities," the Eleventh District looked beyond the caption. *Id.* at ¶ 43-44. It proceeded to analyze under R.C. 2744.03(A)(6) whether the complaint alleged that the administrators and employees, while acting in the course and scope of their employment, nonetheless acted in a reckless, malicious, willful, and wanton manner, thereby impliedly concluding that they were being sued in their individual capacities. Ultimately, the Eleventh District upheld the trial court's determination that the allegations against the individual defendants—including that they had been warned of the need for

14.

additional security, that they willingly and knowingly failed to provide adequate security, that the perpetrator was mentally unstable and high risk for committing violent acts, that the attack was foreseeable and preventable, that they failed to properly evaluate and warn of the perpetrator's at-risk propensity to commit violent acts towards others, and that their conduct was done in a negligent, reckless, willful and wanton manner—were sufficient to withstand a motion for judgment on the pleadings. *Id.* at ¶ 45, 49, 51.

{¶ 29} The Eleventh District likewise held that employees were sued in their personal capacities in *Doe 1 v. Licate*, 2019-Ohio-412 (11th Dist.), and *Alcus v. Bainbridge Twp.*, 2020-Ohio-543 (11th Dist.). In *Licate*, the school district transportation supervisor was found to be sued in his personal capacity where the allegations in the complaint did not challenge any policies or practices of the transportation supervisor's office, the political subdivisions were not named in the complaint, and the complaint alleged that the transportation supervisor personally engaged in actions that subjected him to liability. *Licate* at ¶ 43. In *Alcus*, a township employee was held to be sued in his personal capacity where although the complaint alleged that he was acting within the course and scope of his employment, the complaint was based on the employee's personal actions in operating a backhoe. *Alcus* at ¶ 144. Also, the complaint sought punitive damages from the employee, which "suggests an employee is being sued as an individual." *Id.*

{¶ 30} In contrast, in *Faber v. Seneca Cty. Sheriff's Dept.*, 2018-Ohio-786, ¶ 11 (3d Dist.), the Third District held that a county sheriff was sued in his official capacity

where the complaint did not add the words "personally," "individually," or other language indicating that he was being sued in his personal capacity, where the complaint challenged the policies and practices of the sheriff's office, and where the complaint did not allege any facts in which the sheriff was acting personally in an individual capacity.

{¶ 31} The common thread through all these cases is that the distinction between official capacity and personal capacity turns on whether the claims are based on the individual actions of the defendant, or whether they are based on the policies and procedures of the office. This is entirely consistent with the definitions of personal-capacity suits and official-capacity suits: "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law;" whereas official-capacity suits "[are] *not* [suits] against the official personally," but "another way of pleading an action against an entity of which an officer is an agent." (Emphasis sic.) *Graham*, 473 U.S. at 165-166.

{¶ 32} Applied here, because Foster's complaint is based on the alleged conduct of Fox in returning the video cards to be taped over, and not on the policies and procedures of TPS, the complaint against Fox is in her personal capacity. The trial court, therefore, erred when it determined that Fox was entitled to the same immunity as TPS under R.C. 2744.02.[2]

---

[2] The trial court did not decide, and appellees have not cross-appealed or otherwise raised, the issue of whether Fox is entitled to immunity under R.C. 2744.03(A)(6). This court, therefore, will not address the issue. *See Greenlaw v. U.S.*, 554 U.S. 237, 243-244 (2008), quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring

**{¶ 33}** Accordingly, Foster's assignment of error is well-taken.

## IV. Conclusion

**{¶ 34}** For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is reversed. This matter is remanded to the trial court for further proceedings consistent with this decision. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See*, also, 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Charles E. Sulek, P.J. | [[Applied Signature]] |
| | JUDGE |
| Myron C. Duhart, J. | [[Applied Signature 2]] |
| CONCURS IN JUDGMENT ONLY. | JUDGE |
| Christine E. Mayle, J. | [[Applied Signature 3]] |
| CONCURS AND WRITES SEPERATELY. | JUDGE |

---

in part and concurring in judgment) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. . . . [A]s a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.'").

17.

**MAYLE, J.**

{¶ 35} I agree with the majority's ultimate decision that appellee Cynthia Fox, an individual employee of Toledo Public Schools ("TPS"), does not have political-subdivision immunity under R.C. 2744.02, and the trial court therefore erred by granting the Civ.R. 12(B)(6) motion to dismiss on that basis. I write separately because I disagree with the lead opinion's conclusion that Fox's individual immunity under R.C. 2744.03(A)(6) was not raised on appeal. In truth, R.C. 2744.03(A)(6) was referenced by both parties, but their analysis of Fox's *individual* immunity under R.C. 2744.03(A)(6) was inextricably entangled with the issue of Fox's so-called "official capacity" immunity—which relates to an individual's *political-subdivision* immunity under R.C. 2744.02. This confusion is not surprising, because the parties, the trial court—and, now, the lead opinion—follow the analysis of *Schaad v. Buckeye Valley Local School. Dist. Bd. of Edn.*, 2016-Ohio-569 (5th Dist.), which muddled the issue of governmental immunity for individual employees who, like Fox, do not hold elected office.

{¶ 36} In my view, *Shadd* improperly extended the holding of *Lambert v. Clancy*, 2010-Ohio-1483, paragraph two of syllabus —i.e., that "R.C. 2774.02 applies to lawsuits in which the named defendant *holds an elected office* within a political subdivision and that officeholder is sued in his or her official capacity"—to non-officeholder individual employees, whose immunity is expressly governed by R.C. 2744.03, *not* R.C. 2774.02. (Emphasis added.) For this reason, I disagree with the lead opinion's overall analysis because it perpetuates the improper application of *Lambert* to lawsuits against individual

18.

employees who are not elected officeholders. Moreover, I would address the true issue regarding Fox's potential immunity in this case—i.e., whether Foster's complaint, on its face, alleges a claim against Fox that may bypass her immunity as an individual employee under R.C. 2744.03(A)(6). I would find that the complaint alleged sufficient facts to survive Fox's Civ.R. 12(B)(6) motion to dismiss on immunity grounds.

### 1. The holding and analysis of *Lambert* is unique to "elected officeholders."

{¶ 37} In *Lambert*, the Ohio Supreme Court expressly recognized that the analytical framework for political-subdivision immunity is separate and distinct from the immunity analysis required for claims against individual employees.

{¶ 38} For political subdivisions, courts must employ a "three-tiered analysis" to determine immunity under R.C. 2774.02. *Lambert* at ¶ 8. First, courts must consider the general grant of immunity to political subdivisions under R.C. 2774.02(A)(1)—i.e., "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Second, courts must consider whether any of the express exceptions to political subdivision immunity under R.C. 2744.02(B) are applicable. *Id.* at ¶ 9. Third, if any of the exceptions are applicable, courts must determine if "any of the defenses to liability contained in R.C. 2744.03 apply to reinstate immunity."

{¶ 39} In contrast, "[f]or claims against individual employees, the three-tiered analysis used to determine whether a political subdivision is immune *is not used*."

(Emphasis added.) *Id.* at ¶ 10. Instead, courts must look to R.C. 2744.03(A)(6) to determine if "an employee is personally immune from liability…" *Id.* Under R.C. 2744.03(A)(6), an employee is personally immune unless (a) the employee's acts or omissions "were manifestly outside the scope of the employee's employment or official responsibilities," (b) the employee's acts or omissions "were with malicious purpose, in bad faith, or in a wanton or reckless manner," or (c) "[c]ivil liability is expressly imposed upon the employee by a section of the Revised Code."

{¶ 40} With this background, *Lambert* considered which immunity analysis should be used for elected officeholders—i.e., "whether the political-subdivision-immunity analysis or the employee-immunity provisions apply to lawsuits in which the named defendant holds an elected office within a political subdivision. . . and that officeholder is sued in his official capacity." *Id.* at ¶ 17. Importantly, the court defined "official capacity" to mean "in his capacity *as the elected officeholder* of the political subdivision." (Emphasis added.) *Id.* at ¶ 12. The court then determined that the named defendant in *Lambert*—who was the elected Clerk of Courts for Hamilton County—was sued in his "official capacity" because (1) the complaint named "Greg Hartmann, Hamilton County, Ohio Clerk of Courts" as the only defendant, and there was nothing in the complaint "to denote that he is being sued in his individual capacity as a county employee as opposed to being sued in his official capacity as the clerk of courts," and (2) the allegations "pertain to the policies and practices of the clerk of court's office and not to actions taken by Hartmann personally." *Id.* at ¶15-16.

20.

{¶ 41} The court then concluded that because the "clerk of court's office is an instrumentality of the county. . . [and] is cloaked with the immunity granted to the political subdivision under R.C. 2744.02[,]" by "natural extension. . . the elected holder of [that] office. . . is also entitled to the grant of immunity contained in R.C. 2744.02" when sued in an official capacity. *Id.* at ¶20-21. That is, when "allegations contained in the complaint are ostensively directed against the office and against the named officeholder in the officeholder's official capacity," this is the "equivalent" of suing the political subdivision itself. *Id.* at ¶ 21.

{¶ 42} Thus, the holding and analysis of *Lambert* is specific to elected officeholders. This makes sense: either R.C. 2744.02 or R.C. 2744.03(A)(6) could apply when claims are brought against elected officeholders because these individuals operate in dual capacities. On the one hand, it is "natural" to view these individuals as the official embodiment of the governmental office to which they were elected—and that office enjoys political-subdivision immunity under R.C. 2744.02. On the other hand, elected officials are still individual employees of that office—and individual employees enjoy personal immunity under a different statute, R.C. 2744.03(A)(6). So, when an elected officeholder is sued, courts must first analyze the specific allegations to determine whether the officeholder's immunity is governed by R.C. 2744.02 or R.C. 2744.03(A)(6).

{¶ 43} And *Lambert* provides the framework that courts should use to make that initial capacity determination. If the elected officeholder is sued in his "official capacity"— i.e., "in his capacity *as the elected officeholder* of the political subdivision," *id.* at ¶ 12—

21.

the officeholder's immunity should be analyzed under the political-subdivision statute, R.C. 2744.02. If the elected officeholder is sued in his individual capacity—i.e., "as a[n]. . . employee" for his "personal[]" conduct, *id.* at ¶15-16—then the officeholder's immunity should be analyzed under R.C. 2744.03(A)(6).

{¶ 44} There is absolutely nothing in *Lambert* to suggest that political-subdivision immunity could ever be extended to individual employees who are not elected officeholders. To the contrary, *Lambert* makes clear that R.C. 2744.03(A)(6) governs individual employee immunity and specifies that the analysis for political-subdivision immunity under R.C. 2744.02 "is not used" for claims against individual employees. *Id.* at ¶ 10.

### 2. *Schaad* improperly extends political-subdivision immunity under *Lambert* to individual employees.

{¶ 45} In *Schaad,* a middle-school principal appealed the trial court's denial of his Civ.R. 12(C) motion to dismiss on immunity grounds. The trial court found that the plaintiffs' allegations—"he acted in bad faith or in a malicious, wanton, or reckless or bad-faith manner" and, therefore, was not immune under R.C. 2744.03(A)(6)(b)—were sufficient to survive judgment on the pleadings. *Schaad* at ¶ 9. Relevant here, in his second assignment of error, the middle-school principal relied upon *Lambert* to argue that "under R.C. Chapter 2744, an action against an officeholder *or employee* in his or her official capacity is considered an action against the political subdivision he or she represents," and therefore "when a complaint alleges claims against a political subdivision officeholder *or employee*, the trial court must make an initial capacity determination." (Emphasis added.)

22.

*Id.* at ¶ 32. The middle-school principal argued that the trial court erred by analyzing his immunity under R.C. 2744.03(A)(6) without first making a "capacity determination" regarding his potential "official capacity" immunity under R.C. 2744.02.

{¶ 46} Without any analysis whatsoever, the Fifth District simply accepted the underlying proposition of appellant's argument—that political-subdivision immunity under R.C. 2744.02 is available to both elected officeholders *and* individual employees—and then proceeded to make a "capacity determination" under *Lambert* to determine if the middle-school principal was sued in his "official capacity" or an "individual capacity." There are several problems with this.

{¶ 47} First, there is nothing in R.C. 2744.03(A)(6)—or any other statute of the Revised Code—to suggest that an individual employee, who is not an elected officeholder, is immune from liability if sued in her so-called "official capacity."

{¶ 48} Second, as I've already explained above, this unwarranted extension of political-subdivision immunity to individual employees is contrary to the analysis and holding of *Lambert*. Also, it makes no sense. Unlike the elected Hamilton County Clerk of Courts in *Lambert*, the middle-school principal in *Schaad*—like any other non-officeholder employee—does not serve in dual capacities. Individual employees serve in only one "capacity": as an individual employee. The immunity of individual employees is expressly governed by R.C. 2744.03(A)(6), not R.C. 2744.02. Thus, there is no logical reason to make an initial "capacity" determination for non-officeholder individual employees.

23.

**{¶ 49}** Third, *Schaad*'s unwarranted extension of initial "capacity determinations" to non-officeholder employees has confused courts and litigants into believing that an employee acts in an "official capacity"—and is therefore immune *as a political subdivision* under R.C. 2744.02—if they are alleged to have acted *within the scope of employment*. *See, e.g.*, Trial Court Order and Judgment Entry, February 20, 2024, at 10 ("The immunity analysis for Defendant Fox therefore rests on whether Plaintiff has asserted the spoliation claim against Defendant Fox personally and individually or in her official capacity as an employee of Defendant TPS."), *id.* at pg. 11-12 (finding Fox immune because she was sued in her "official capacity" as demonstrated, in part, by the allegations that she "was acting in the course and scope of said employment."); Appellee Brief of Cynthia Fox at 6 ("The Complaint also, in various paragraphs, states that Ms. Fox was acting within the course and scope of her employment, i.e., in her official capacity.").

**{¶ 50}** This confusion stems from the misguided analysis of *Schaad*, which states that factors favoring a conclusion that a non-elected individual employee was sued in an "official capacity"—and, therefore, is immune as a political subdivision under R.C. 2744.02—include (1) the lack of "personally" or "individually" after the employee's name in the caption, (2) service at their "business address, not at home," and (3) allegations that the employee acted "in the course and scope of . . . employment." *Schaad* at ¶ 33. Not only are these purported factors absent from R.C. 2744.03(A)(6), this analysis is contrary to the express language of the statute.

24.

{¶ 51} Under R.C. 2744.03(A)(6), an individual employee is immune from liability unless (a) the employee's acts or omissions "were manifestly outside the scope of the employee's employment or official responsibilities," (b) *the employee's acts or omissions "were with malicious purpose, in bad faith, or in a wanton or reckless manner,"* or (c) "[c]ivil liability is expressly imposed upon the employee by a section of the Revised Code." (Emphasis added). So, under the explicit language of the statute, an employee loses immunity if she acted "with malicious purpose, in bad faith, or in a wanton reckless manner" while in the course and scope of employment. R.C. 2744.03(A)(6)(b).

{¶ 52} All of this is to say that *Schaad* has made a mess of this issue, and courts should not perpetuate its mistaken extension of *Lambert* to claims against non-officeholder individual employees. If a non-officeholder employee is sued as an employee and for his or her own personal actions, any immunity analysis should proceed under R.C. 2744.03(A)(6) alone. The suggestion that an individual employee, who does not hold elected office, may somehow be immune *as a political subdivision* under R.C. 2744.02 if alleged to have been acting in her "official capacity" *as an employee* is illogical and incorrect.

### 3. The complaint alleges sufficient facts to survive the motion to dismiss under R.C. 2744.03(A)(6).

{¶ 53} Although both parties structure their arguments around the "official capacity" issue that relates to political-subdivision immunity, at least some of the parties' arguments relate to the elements of personal immunity under R.C. 2744.03(A)(6)—which,

25.

as explained above, is the correct issue to be analyzed because this case involves a complaint against a non-officeholder individual employee.[3]

{¶ 54} Foster argues that R.C. 2744.03(A)(6) "does not require an employee to be acting outside the scope and course of their employment to be found liable. Ohio courts have upheld this interpretation as an employee can act in bad faith, maliciously, recklessly, and/or wantonly, all while acting in the course and scope of employment." Appellant Brief of Ramon Foster at pg. 13. Foster argues that his allegations against Fox are sufficient to state a claim because he alleges that she "intentionally destroyed evidence" when she "destroyed the video footage" of the crash. *Id.* at 14.

{¶ 55} In response to this argument, Fox argued that "[t]here is no allegation in the Complaint that Ms. Fox 'intentionally destroyed evidence' as Appellant claims in his brief," and "[t]he only 'malice' alleged was in the rote recitation of the elements [of R.C. 2744.03(A)(6)(b)] and in reference to both 'Defendants' as a whole." Appellee Brief of Cynthia Fox at 7.

{¶ 56} Appellate courts review de novo a trial court's decision granting a Civ.R. 12(B)(6) motion to dismiss. *Curcio v. Hufford*, 2022-Ohio-4766, ¶ 12 (6th Dist.), citing

---

[3] I disagree with the lead opinion's suggestion that Fox needed to "cross appeal" the trial court's order of dismissal to raise R.C. 2744.03(A)(6) as an additional grounds for dismissal. "A person who intends to defend an order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the order is not required to file a notice of cross-appeal or to raise a cross-assignment of error." App.R. 3(C)(2).

26.

*Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5. In reviewing a Civ.R. 12(B)(6) motion, the court presumes that the complaint's factual allegations are true and makes all reasonable inferences in the nonmoving party's favor. *Curcio* at ¶ 12; *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). To dismiss the complaint, "'it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought.'" *Id.*, quoting *Ohio Bur. of Workers' Comp. v. McKinley*, 2011-Ohio-4432, ¶ 12.

{¶ 57} Here, the complaint clearly and repeatedly alleges that Fox was acting within the course and scope of her employment—which negates the potential for any personal liability under R.C. 2744.03(A)(6)(a). But, the complaint contains the factual allegations that, when assumed to be true, give rise to a reasonable inference that Fox acted with malice or bad faith under R.C. 2744.03(A)(6)(b). Thus, the complaint contains sufficient allegations to survive the motion to dismiss.

{¶ 58} "For purposes of R.C. 2744.03(A)(6)(b), 'malice' requires that the employee 'engage in a "willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified."'" *Gaither v. Kelleys Island Local School Dist. Bd. of Edn.*, 2023-Ohio-1299, ¶ 28 (6th Dist.), quoting *Horen v. Bd. of Edn. of Toledo Pub. Schools*, 2010-Ohio-3631, ¶ 48 (6th Dist.), quoting *Jackson v. Butler Cty. Bd. of Commrs.*, 76 Ohio App.3d 448, 453-454 (12th Dist.1991), *abrogated on other grounds as stated in Anderson v. Massillon,* 2012-Ohio-5711, ¶ 30. "Bad faith" means that "the employee acts 'with a dishonest purpose, moral obliquity,

27.

conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will, and embraces actual intent to mislead or deceive another.'" *Horen* at ¶ 48, quoting *Jackson v. McDonald,* 144 Ohio App.3d 301, 309 (5th Dist.2001).

{¶ 59} According to the complaint, on September 24, 2019, Foster was riding his motorcycle when a TPS school bus "abruptly changed lanes in Plaintiff's right of way," causing Foster to suffer "serious injuries." Complaint at ¶ 9. "Upon being informed of the incident, Defendant Fox, in the course and scope of her employment with Defendant TPS, pulled the video cards from two TPS buses, viewed the video footage, determined that the videos and audio recordings contained information of the Plaintiff's movements and location during the incident, and maintained possession of both video cards." *Id.* at ¶ 10. On September 27, 2019, plaintiff's counsel sent a preservation letter to the insurance company for TPS, "formally demanding that any video footage from both buses be retained and preserved." *Id.* at ¶ 12. On January 5, 2022, Fox admitted under oath that she "[held] the video cards for two to three weeks" and then "return[ed] both video cards to TPS buses to be taped over without making any prior attempt to save or preserve the video footage of September 24, 2019." *Id.* at ¶ 13. Importantly, the complaint alleges that "[d]efendants knew that as a result of the motorcycle crash there would be probable litigation involving Plaintiff Ramon Foster, yet willfully destroyed and/or erased the video capturing the incident." *Id.* at ¶ 15. The complaint further alleges that the defendants willfully destroyed the videos "in an effort to disrupt Plaintiff's case." *Id.* at ¶ 16.

28.

{¶ 60} These allegations are sufficient to survive a Civ. R. 12(B)(6) motion to dismiss. These factual allegations, if taken as true, give rise to a reasonable inference that Fox reviewed the TPS bus videos, knew that the videos captured the accident with Foster, knew that "there would be probable litigation" with Foster regarding the accident, and willfully destroyed the videos "in an effort to disrupt Plaintiff's case." In my view, these allegations (although minimal) are sufficient to state a claim for which Fox may be personally liable under R.C. 2744.03(A)(6)(b). That is, Fox is alleged to have willfully destroyed the TPS bus videos to disrupt Foster's case against TPS, which suggests malice or bad faith.

{¶ 61} For these reasons, I concur in the majority's decision to reverse the trial court's judgment because the complaint alleged sufficient facts to survive Fox's Civ.R. 12(B)(6) motion to dismiss on immunity grounds.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.